**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
         jsmith@bursor.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WINDI WINTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIDGEWOOD INDUSTRIES LTD. and DOREL HOME FURNISHINGS, INC.,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Windi Winters ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Ridgewood Industries, Ltd., and Dorel Home Furnishings, Inc. (collectively, "Defendants"), for the manufacture, marketing, and sale of Belmont Four-Drawer Dresser products identified below. Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF ACTION

1. This is a class action against Defendants Ridgewood Industries, Ltd. ("Ridgewood"), and Dorel Home Furnishings, Inc. ("Dorel"), d/b/a Ameriwood Home, for the manufacture and sale of certain Belmont Four-Drawer Chests (collectively, the "Products"), all of which suffer from an identical defect in design. Specifically, the Products' defective design renders them unstable, posing severe tip-over and entrapment hazards that can result in death or injuries to children. This defect renders the Products unsafe for their principal purpose.

2. Plaintiff brings claims against Defendants individually and on behalf of a class of all other similarly situated purchasers of the Products for (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210; (3) unjust enrichment, (4) breach of implied warranty under the Song-Beverly Act, (5) breach of implied warranty, and (6) violation of the Magnuson-Moss Warranty Act ("MMWA").

## PARTIES

3. Plaintiff Windi Winters is, and at all times relevant to this action has been, a resident of Stockton, California. In approximately the fall of 2017, Ms. Winters purchased multiple Belmont Four-Drawer Dressers from a K-Mart store located in Stockton, California for approximately $40 each. Ms. Winters is a mother of young children and purchased the Products because she believed they were safe and suitable for use as dressers. However, the Products Ms. Winters purchased were not fit for use as dressers due to the Products' defective nature. In fact, the Products indeed tipped over posing a severe safety hazard to her children. Ms. Winters would not

1. have purchased the Products had she known that the Products were unsafe and unfit to perform their intended purpose.

4. The defect manifested in the Products shortly after Ms. Winters purchased them, tipping over and hitting one of her children. Ms. Winters disposed of the Products because they posed a serious safety hazard to her children. Ms. Winters disposed of the Products long before she ever contemplated litigation.

5. Ms. Winters reviewed the Products' packaging prior to purchase. Defendants disclosed on the packaging that the Products were four-drawer dressers and described features typical of dressers but did not disclose the defect. Had there been a disclosure, Ms. Winters would not have bought the Products because the defect would have been material to her, or at the very least, she would have purchased the Products at a substantially reduced price. Ms. Winters relied on the packaging in making her purchase decision.

6. Defendant Ridgewood Industries Ltd. is a Canadian corporation with its principal place of business at 3305 Loyalist St., Cornwall, Ontario. Defendant Ridgewood Industries Ltd. manufactures the Products throughout the United States.

7. Defendant Dorel Home Furnishing Inc. is a Delaware corporation with its principal place of business at 410 East First Street South, Wright City, Missouri 63390. Defendant Dorel Home Furnishing Inc. markets a wide assortment of imported furniture products throughout North America and has annual sales of $2.6 billion. Defendant Dorel Home Furnishing Inc. markets, distributes, and sells the Products throughout the United States.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

9. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District, a substantial part of the events giving rise to Plaintiff's claims took place within this District because Plaintiff purchased her Products in this District and resides in this District.

## COMMON FACTUAL ALLEGATIONS

11. Defendant Dorel Home Furnishing Inc. is a worldwide leading marketer, distributor, and seller of home furnishing products. Among the various home furnishing products sold by Dorel are Belmont Four-Drawer Dressers bearing model numbers 5933015K, 5933026K, 5933080K, 5933102K, 634026KPM, 634102KPM, 63415KPM, and 63480KPM (the "Products"). The Products are manufactured by Ridgewood Industries Ltd and marketed, distributed, and sold by Dorel under its "Ameriwood Home" brand. From a functional and manufacturing standpoint, the Products are nearly identical. The only difference among the Products is that they come in multiple colors, and certain models are shorter than others. The Products are otherwise identical in dimensions and are pictured below:

   

12. The Products were made defectively, rendering the Products unstable and causing them to tip over. Defendants have admitted that the Products' defective nature poses severe tip-over and entrapment hazards that can result in death or injuries to children.[1] Defendants were undoubtedly aware of the Products' dangerous and defective nature because they admitted that

---

[1] https://www.cpsc.gov/Recalls/2020/Ridgewood-Recalls-Four-Drawer-Dressers-Due-to-Tip-Over-and-Entrapment-Hazards

certain models of the Products do not comply with performance requirements of the U.S. Standard Safety Specifications for Clothing Storage Units (ATSM F2057).[2]

13. Furniture tip-over accidents are becoming increasingly common. Every year, approximately 40,000 people visit emergency rooms due to such accidents, 25,000 of whom are children.

14. For instance, in 2010, furniture tip-overs accounted for the deaths of 49 children in the United States. And in 2011, according to the Consumer Product Safety Commission ("CPSC"), furniture tip-overs killed 49 children in the United States. The CPSC estimates that between 2000 and 2018, there have been 459 deaths involving children due to furniture tip-overs.

15. For this reason alone, it is unclear why Defendants chose not to abide by applicable performance requirements and safety standards when manufacturing, distributing, and selling the Products. Clearly aware that their Products were noncompliant with applicable safety guidelines, Defendants made no design changes and continued to manufacture, distribute, and sell the existing inherently unstable design for many years.

16. And despite actual knowledge that the Products were unsafe for their intended and/or foreseeable use, Defendants failed to warn consumers of the risk of danger or serious injury that Defendants knew could arise from use of the Products in an intended and/or foreseeable manner, particularly in environments in which the dresser was used by and/or accessible to children.

17. Defendants knew based on their experience with manufacturing, marketing, and selling other furniture that the Products presented an unreasonable tip-over hazard arising from their defective and dangerous design. Nonetheless, Defendants failed to provide adequate warnings, instructions, or wall attachment hardware. At the time they were sold, Defendants knew that the Products presented an unreasonable tip-over hazard because of its defective and dangerous design.

---

[2] *Id.*

18. In October of 2019, Defendants issued a recall of the Products, and admitted that the Products pose serious tip-over and entrapment hazards that can result in death or injuries to children. Defendants sold roughly 1,000,000 Products in the United States.

19. The recall allowed Defendants to *say* they were doing right by its customers, but in fact the recall protected Defendants' profits. For example, the recall notice was only briefly publicized. Additionally, notice of the recall was poorly publicized. Defendant Dorel's website, ameriwoodhome.com, contains a link to recall information but the link is in small, inconspicuous text buried at the very bottom of the webpage among a list of other links, and class members would not have a reason to find and follow the link if they did not already know about the recall in the first place.

20. Moreover, Defendants do not purport to be contacting any known purchasers directly. Worst of all, the recall does not offer consumers any form of monetary relief whatsoever, none of whom would have purchased the Products on the same terms had they known the truth about the Products' defective and dangerous nature.

21. Although Defendants sell the Products through authorized retail stores, Plaintiff and Class Members are intended third-party beneficiaries of the contractual relationship between Defendants and retail stores because the retail stores were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements or contracts of sale provided with the Products. Defendants know and intend that consumers such as Plaintiff and Class Members are the end-users of its Products.

22. That Defendants sold their Products exclusively through a network of authorized retailers is clear from Defendant Dorel's own website, www.ameriwoodhome.com, which does not allow consumers to purchase products directly from Defendants. Instead, consumers click on a "where to buy" button for a specific product and are directed to various retailers that offer the product for sale. Thus, it was impossible to purchase the Products directly from Defendants. For this reason, consumers – not the various retailers – are the intended beneficiaries of the implied warranty associated with the sale of the Products.

23. As a result of Defendants' actions, Plaintiff and Class Members have suffered injury in fact, have been damaged, and have suffered a loss of money or property for having paid more money than they otherwise would have for a dangerous and defectively designed product.

## CLASS REPRESENTATION ALLEGATIONS

24. Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products (the "Class"). Excluded from the Class are persons who made such purchases for purpose of resale.

25. Plaintiff also seeks to represent a subclass of all Class Members who purchased the Products in the State of California (the "California Subclass"). Excluded from the Class are persons who made such purchases for purpose of resale.

26. Subject to additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including through the use of multi-state subclasses.

27. At this time, Plaintiff does not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "California Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States selling Defendants' Products, Plaintiff believes that Class and California Subclass Members are so numerous that joinder of all members is impracticable.

28. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the Class Members that predominate over questions that may affect individual Class Members include:

   (a) whether Defendants misrepresented and/or failed to disclose material facts concerning the Products;

   (b) whether Defendants' conduct was unfair and/or deceptive;

   (c) whether Defendants have been unjustly enriched as a result of the unlawful conduct alleged in this Complaint such that it would be inequitable for Defendants to retain the benefits conferred upon Defendants by Plaintiff and the Class;

(d) whether Plaintiff and the Class sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

29. With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendants violated the California Consumer Legal Remedies Act as well as California's False Advertising Law.

30. Plaintiff's claims are typical of those of the Class because Plaintiff, like all Class Members, purchased, in a typical consumer setting, Defendants' Products, and Plaintiff sustained damages from Defendants' wrongful conduct.

31. Plaintiff will fairly and adequately protect the interests of the Class and Subclasses and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class or the California Subclass.

32. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

33. The prosecution of separate actions by members of the Class and the California Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class and the Subclasses even where certain Class or California Subclass Members are not parties to such actions.

## COUNT I

**Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.***

34. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

35. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

36. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

37. Defendants violated Civil Code § 1770(a)(5), (a)(7) and (a)(9) by holding out Products as fit for use as dressers, when in fact the products were defective and dangerous.

38. Defendants had exclusive knowledge of the defect, which was not known to Plaintiff or California Subclass Members.

39. Defendants made partial representations to Plaintiff and the California Subclass Members, while suppressing the safety defect. Specifically, by displaying the Products and describing their features, the Products' packaging implied that the Products were suitable for use as a dresser, without disclosing that the Products had a critical defect that would render the Products defective and dangerous.

40. Plaintiff and the California Subclass Members have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid.

41. On October 17, 2019, prior to the filing of this Complaint, Plaintiff's counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code §1782(a). The letter also provided notice of breach of express and implied warranties. The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers. Defendants did not respond to the letter.

42. Plaintiff and the California Subclass Members seek all relief available under the CLRA, including restitution, the payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court.

## COUNT II
### (Violation California's Unfair Competition Law)

43. Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

44. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

45. By committing the acts and practices alleged herein, Defendants have violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

46. Defendants have violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7) and (a)(9) as alleged above.

47. Defendants' acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

48. As more fully described above, Defendants' misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

49. Defendants' acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

50. Plaintiff and the other California Subclass Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled product.

51. There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Products.

52. Plaintiff and the other California Subclass Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

53. The gravity of the consequences of Defendants' conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the California Subclass Members.

54. Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to: (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; (c) pay Plaintiff's and the California Subclass' attorney's fees and costs.

## COUNT III
### (Unjust Enrichment)

55. Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

56. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendants.

57. Plaintiff and Class Members conferred benefits on Defendants by purchasing the Products.

58. Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the Products. Retention of those moneys under these circumstances is unjust and inequitable because Defendants failed to disclose that the Products were unfit for use as dressers. These omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Products if the true facts were known.

59. Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

## COUNT IV

**(Breach of Implied Warranty Under the Song-Beverly Act, Cal. Civ. Code § 1790 *et seq.*)**

60. Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

61. Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

62. Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.*, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty that the goods are merchantable, as defined in that Act. In addition, every sale of consumer goods in this State is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose (here, to be used as dressers) and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

63. The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

64. Plaintiff and the Class Members who purchased one or more of the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791.

65. Defendants are in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and therefore are a "manufacturer" and "seller" within the meaning of Cal. Civ. Code § 1791.

66. Defendants impliedly warranted to retail buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used. For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Defendants breached these implied warranties because the Products were defective. Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

67. Plaintiff and Class Members purchased the Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Products.

68. The Products were not altered by Plaintiff or Class Members.

69. The Products were defective at the time of sale when they left the exclusive control of Defendants. The defect described in this complaint was latent in the Products and not discoverable at the time of sale.

70. Defendants knew that the Products would be purchased and used without additional testing by Plaintiff and Class Members.

71. As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the products, namely, that they were unfit for use as dressers.

## COUNT V
### (Breach of Implied Warranty of Merchantability)

72. Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

73. Plaintiff bring this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

74. Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the Products was, in fact, safe and fit to perform their intended purpose.

75. Defendants breached the warranty implied in the contract for the sale of the Products because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Products were defectively designed, rendering them unstable and posing a severe tip-over and injury hazard. As a result, Plaintiff and the Class Members did not receive the goods as impliedly warranted by Defendants to be merchantable.

76. Plaintiff and Class Members purchased the Products in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

77. The Products were not altered by Plaintiff or the Class Members.

78. The Products were defective when they left the exclusive control of Defendants.

79. Defendants knew that the Products would be purchased and used without additional testing by Plaintiff and the Class Members.

80. The Products were defectively designed and both unsafe and unfit for their intended purpose, and Plaintiff and the Class Members did not receive the goods as warranted.

81. As a direct and proximate case of Defendants' breach of the implied warranty, Plaintiff and the Class Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products and the Products they received were worth substantially less than the Products they were promised and expected.

## COUNT VI
### (Violation Of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)

82. Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendants.

84. The Products are consumer products as defined in 15 U.S.C. § 2301(1).

85. Plaintiff and the Class and California Subclass Members are consumers as defined in 15 U.S.C. § 2301(3).

86. Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

87. In connection with the marketing and sale of the Products, Defendants impliedly warranted that the Products were fit for use as dressers. The Products were not fit for use as dressers due to the defect described in the allegations above.

88. By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and the Class and California Subclass Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and the Class and California Subclass Members.

89. Plaintiff and the Class and California Subclass Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they knew the truth about the defective nature of the Products.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

    a.    For an order certifying the Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and California Subclass members;

    b.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

    c.    For an order finding in favor of Plaintiff, the Class, and the California Subclass on all counts asserted herein;

    d.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

    e.    For pre-judgment interest on all amounts awarded;

    f.    For an order of restitution and all other forms of monetary relief;

    g.    For an order awarding Plaintiff and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of all issues so triable.

Dated: January 13, 2020                    Respectfully submitted,

                                                  **BURSOR & FISHER, P.A.**

                                                  By:        */s/ L. Timothy Fisher*

                                                  L. Timothy Fisher (State Bar No. 191626)
                                                  Joel D. Smith (State Bar No. 244902)

1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
         jsmith@bursor.com

*Counsel for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Windi Winters in this action. Plaintiff Windi Winters resides in Stockton, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Eastern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 10th day of January 2020.

*/s/ L. Timothy Fisher*
L. Timothy Fisher