UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| WENDI WINTERS, on behalf of herself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>RIDGEWOOD INDUSTRIES, LTD. and DOREL HOME FURNISHINGS, INC.,<br><br>  Defendants. | No. 2:20-cv-00092 WBS KJN<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS |

----oo0oo----

Plaintiff Wendi Winters filed this action on behalf of herself and all others similarly situated against defendants Ridgewood Industries, LTD. and Dorel Home Furnishings, Inc. (collectively "Defendants"), alleging several consumer fraud and warranty claims, arising out of plaintiff's purchase of defendants' furniture. Before the court is defendants' motion to dismiss. (Docket No. 8.)

I. <u>Relevant Allegations</u>

1

1         At issue is the manufacture and sale of the Belmont
2    Four-Drawer Chests (hereinafter "drawers").  (Compl. ¶ 1 (Docket
3    No. 1).)  Ridgewood Industries manufactures the drawers
4    throughout the United States.  (Id. ¶ 6.)  Dorel Home Furnishings
5    markets, distributes, and sells them.  (Id. ¶ 7.)
6         In 2017, plaintiff purchased several of such drawers.
7    (Id. ¶ 3.)  Shortly thereafter, one of the drawers allegedly
8    tipped over and hit one of plaintiff's children.  (Id. ¶ 4.)
9    Plaintiff alleges that she then disposed of the products because
10   they posed a safety hazard to her children.  (Id.)
11        According to plaintiff, the drawers "were made
12   defectively, rendering the [p]roducts unstable and causing them
13   to tip over." (Id. ¶ 12.)  The drawers' "defective nature"
14   allegedly poses "severe tip-over and entrapment" risks.  (Id.)
15   Defendants allegedly were aware of the product's "defective
16   nature." (Id.)  The packaging that accompanied the drawers,
17   however, "did not disclose the defect." (Id. ¶ 5.)  Defendants
18   also "failed to provide adequate warnings, instructions, or wall
19   attachment hardware." (Id. ¶ 17.)  "Had there been a disclosure,
20   [plaintiff] would not have bought" the dressers," or "would have
21   purchased the [p]roducts at a substantially reduced price."
22   (Id.)
23        Plaintiff' Complaint consists of the following claims:
24   (1) violation of California's Consumers Legal Remedies Act
25   ("CLRA"), California Civil Code § 1750, et seq.; (2) violation of
26   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.
27   Code §§ 17200, et seq.; (3) unjust enrichment; (4) breach of
28   implied warranty of merchantability in violation of the Song-

2

Beverly Act, Cal. Civ. Code §§ 1790, et seq.; (5) breach of implied warranty of merchantability; and (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. (See generally Compl.)  Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing.

II. Discussion

         The "irreducible constitutional minimum of standing" requires a showing that (1) plaintiff suffered an "injury in fact" that (2) is "fairly ... trace[able] to the challenged action of the defendant," and that (3) is redressable by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  The standing requirement applies to "all claims litigated in a federal court whether based on federal or state law." In re Capacitors Antitrust Litig., 154 F. Supp. 3d 918, 925-26 (N.D. Cal. 2015); see also Lee v. Am. Nat'l Ins. Co., 260 F.3d 997, 1001-02 (9th Cir. 2001). "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561. "'[A] plaintiff must demonstrate standing for each claim he seeks to press.'" (Maya v. Centex Corp., 658 F.3d 1060, 1068-69 (9th Cir. 2011) (quoting Davis v. Fed. Elec. Comm'n, 554 U.S. 724, 734 (2008).  Defendants here contest only the injury-in-fact element.

         To establish injury-in-fact, plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotation marks omitted). Where multiple claims in a complaint are based on the same

3

factual allegations, the same injury-in-fact requirement applies to all such claims. See, e.g., In re Capacitors, 154 F. Supp. 3d at 927 n.4 ("Because the [claims] here are based on the same factual allegation . . . the Article III injury-in-fact needed is the same for both types of claims."); Azoulai v. BMW of N. Am. LLC, No. 16-CV-00589-BLF, 2017 WL 1354781, at *4 (N.D. Cal. Apr. 13, 2017); Lassen v. Nissan N. Am., Inc., 211 F. Supp. 3d 1267, 1274-75 (C.D. Cal. 2016).

Plaintiff here grounds all six of her claims in the same consumer fraud allegations: she alleges that the drawers at issue are defective and that defendants failed to either disclose the defect or provide adequate wall attachment hardware. (Compl. ¶ 39 (Count One); ¶¶ 47-49 (Count Two); ¶ 58 (Count Three); ¶ 67 (Count Four); ¶ 80 (Count Five); ¶ 87 (Count Six); see also Compl. ¶¶ 5, 17 (general fraud allegations).) Plaintiff claims that purchasers "suffered injury in fact . . . for having paid more money than they otherwise would have for a dangerous and defectively designed product," and alleges overpayment as the only injury under all six claims.[1] (Compl. ¶ 23; see also Compl. ¶ 40 (Count One); ¶ 50 (Count Two); ¶ 58 (Count Three); ¶ 71 (Count Four); ¶ 81 (Count Five); ¶ 89 (Count Six).) All claims

---

[1] Although plaintiff alleges that one of the drawers she purchased tipped over and injured one of her children (Compl. ¶ 4), plaintiff's child is not a party to this action and none of plaintiff's claims are based on these allegations, nor does plaintiff seek to recover for those injuries. Accordingly, "those injuries do not support standing to sue on the claims asserted here." See Azoulai v. BMW of N. Am. LLC, No. 16-CV-00589-BLF, 2017 WL 1354781, at *4 (N.D. Cal. Apr. 13, 2017) (finding lack of injury-in-fact to support consumer fraud claims despite allegations of bodily injury).

here are therefore subject to the same injury-in-fact requirement.

For the following reasons, the court finds that the Complaint fails to allege an injury-in-fact. At the outset, the allegations do not identify how the drawers are defective. Where the "plaintiff's alleged economic harm centers on the[] claim that the [product] has a defect," the "fail[ure] to allege a cognizable defect" deprives the plaintiff of standing. Birdsong v. Apple Inc., 590 F.3d 955, 961 (9th Cir. 2009). Plaintiff offers no meaningful description of the alleged "defect" at all. The Complaint simply states that the drawers "were made defectively, rendering [them] unstable and causing them to tip over." (Compl. ¶ 12.) The "cause" of the furniture tipping over -- i.e. the defect -- is absent from the allegations.

The Ninth Circuit's opinion in Birdsong v. Apple is instructive here. The Birdsong plaintiffs filed suit alleging that defendant's product was capable of producing sounds that could potentially cause hearing loss. 590 F. 3d at 957. Plaintiffs argued that they suffered injury-in-fact because the products had a defect that "caused [the products] to be worth less than what they paid for them." Id. at 961. The Ninth Circuit found that plaintiffs' allegations were insufficient to find injury-in-fact because the product's "inherent risk of hearing loss" was not a "cognizable defect," and because "plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with." Id.

Here, just as in Birdsong, plaintiff alleges only that

the drawers' "defective nature poses severe tip-over" risk, which is not a "cognizable defect." (See Compl. ¶ 12.)  Further, as in Birdsong, plaintiff claims the loss of a benefit to which she was not entitled.  Plaintiff claims that the drawers were "worth substantially less than the Products they were promised and expected." (Compl. ¶ 81.)  The complaint, however, does not at all plead what defendants "promised" or what plaintiff "expected," and therefore does not establish that a benefit was lost.  Cf. Birdsong, 590 F.3d at 961 ("The plaintiffs do not allege that [defendant] made any representations that [its] users could safely listen to music at high volumes for extended periods of time.").  Accordingly, the allegations are insufficient to support a finding of injury-in-fact.

Indeed, because the allegations do not establish facts that support plaintiff's expectations of a heightened level of safety, the allegations fail to establish that the drawer malfunctioned or otherwise failed to do anything it was designed to do.  In Lassen v. Nissan North America, Inc., plaintiffs purchased vehicles equipped with keyless fob ignition systems that lacked an auto-off feature.  211 F. Supp. 3d 1267, 1271 (C.D. Cal. 2016).  Plaintiffs filed suit asserting that the lack of an auto-off feature constituted a design defect that defendant had a duty to disclose.  Id.  The court found that plaintiff "failed to plead a design defect that is actionable in the consumer fraud context" because "Plaintiffs did not purchase their vehicles based on any expectation that they included additional safety features."  Id. at 1283-84.  Instead, plaintiff "merely suggest[ed] possible changes . . . which they believe[d]

6

1 would make the product safer." Id. at 1283 (quoting Birdsong,
2 590 F.3d at 959).

3 Just as in Lassen, the allegations here do not
4 establish that plaintiff purchased the drawers based on any
5 expectation that they included additional or better wall
6 attachment hardware or instructions. Plaintiff's allegations
7 instead suggest improvements to defendant's current safety
8 measures and therefore do not sufficiently plead injury-in-fact.
9 (Compare Compl. ¶ 17 ("Defendants failed to provide adequate
10 warnings, instructions, or wall attachment hardware."), with Mot.
11 at 11, 12 ("Owner's Manual") (including a "safety bracket kit"
12 and instructions for how to "anchor" the drawer to the wall in
13 the drawers' packaging).)

14 For the same reason, plaintiff's reliance on Maya v.
15 Centex Corp., 658 F.3d 1060 (9th Cir. 2011), Mazza v. American
16 Honda Motor Co., 666 F.3d 581, 595 (9th Cir. 2012), and In re
17 Arris Cable Modem Consumer Litigation, 327 F.R.D. 334, 352 (N.D.
18 Cal. 2018), is misplaced. In each of those cases, unlike in the
19 present matter, the plaintiffs' allegations of economic injury
20 were supported by factual allegations that defendant represented
21 to plaintiff that the product had features or value that the
22 product ultimately did not have. In other words, plaintiffs did
23 not receive the benefit of their bargain.

24 In Maya, plaintiffs purchased homes in new developments
25 and filed suit against the developers. 658 F.3d at 1065.
26 Plaintiffs alleged that the developers' marketing scheme
27 misrepresented the quality of the neighborhood and the
28 plaintiffs' ability to pay. Id. Plaintiffs alleged that they

consequently overpaid for the homes they purchased.  Id. at 1069.  The Maya court found that plaintiffs' allegations of economic injury satisfied the injury-in-fact requirement because "defendant's actions" -- their misrepresentations -- caused plaintiffs to spend money that "they would not have spent" otherwise.  Id.  Unlike plaintiff here, the Maya plaintiffs could clearly identify defendants' promises and plaintiffs' expectations with regard to the purchase.

   The court in Mazza applied similar logic.  In Mazza, plaintiffs purchased vehicles equipped with a collision mitigation system.  666 F.3d 581 at 585.  Defendant advertised the system's capabilities to alert the driver of a pending collision or to reduce the severity of the impact.  Id. at 586.  Plaintiffs alleged that the system did not work as advertised because, among other reasons, the system "may not warn drivers in time to avoid an accident."  Id. at 587.  The Mazza court found that, "[t]o the extent that class members were relieved of their money by [defendant's] deceptive conduct . . . they have suffered an "injury in fact."  Id.  Just as in Maya, the Mazza court's standing inquiry for economic injury focused on what features or value plaintiffs expected, paid for, and did not receive, as a result of defendant's misrepresentations.

   The manufacturer's misrepresentation similarly drives the reasoning in In re Arris Cable.  In In re Arris Cable, consumers purchased modems that defendant repeatedly advertised as "fast and reliable."  327 F.R.D. at 344.  In reality, the modem caused plaintiffs to experience "severe network latency."  Id.  Plaintiffs filed suit alleging economic injury.  Id.  The

court found that the allegations satisfied the injury-in-fact element of standing because "plaintiffs' theory of economic injury is not based on the absence of an unbargained-for safety feature." Id. at 353.  Instead, "Plaintiffs alleged that Defendant advertised the [product] as delivering a fast, reliable internet connection, but Defendant in fact sold a [product] that offered a slower and less reliable connection than advertised." Id. at 353-54.  Just as in Maya and Mazza, plaintiffs identified what defendant clearly promised at the time of purchase and what plaintiffs subsequently did not receive.  See id. (finding that plaintiffs "bargain[ed] for speed and reliability" that defendant did not deliver).

The In re Arris Cable court specifically distinguished the Birdsong and Lassen line of cases in a way that is helpful to the court here.  "[A]t the center of the reasoning in Birdsong [and] Lassen is a discomfort with no-injury products liability actions being tried as consumer fraud cases." Id. at 352; see also Lassen, 211 F. Supp. 3d at 1281 ("A number of courts have rejected for lack of standing or injury similar attempts to recast no-injury products-liability claims (which are not cognizable) as consumer fraud claims for contract-like economic damages (which may be cognizable).")  Unlike in Birdsong, Lassen, and the matter at hand, the In re Arris Cable plaintiff "d[id] not use the term 'defect' in the same sense that the term is used in a personal injury products liability case." In re Arris Cable, 327 F.R.D. at 353.  Instead, "[p]laintiffs use[d] the term 'defect' to identify the causes of the [product's] alleged subpar performance.  Id.

As the complaint stands, this case amounts to an attempt to recast a no-injury products liability action as a consumer fraud claim and does not allege an injury-in-fact.  Cf. Lessen, 211 F. Supp. 3d at 1281 (characterizing the claim as a "no-injury products-liability" claim where plaintiff alleged that defendant "wrongfully induced Plaintiffs to purchase their [product] by concealing a material fact (the alleged defect), and that Plaintiffs would have paid less for their [products]").  As the Lassen court explained, "products liability design defect standards are not readily transferable to consumer fraud claims." Id. at 1286.  Most relevant here is the fact that products liability law and consumer fraud law protect different interests.  As evidenced by Maya, Mazza, and In re Arris Cable, "the purpose of consumer fraud law . . . is to 'prevent sellers from deceiving consumers about their products or services.'"  Id. at 1286.  "Where," as is the case here, "[the] gravamen of the defect is that the product does not malfunction but lacks certain additional safety features, the claim starts to become less about deception and more about consumer safety, which is not the immediate concern of consumer fraud law."  Id. at 1287.

Considering the two distinct lines of cases alleging economic injury as well as plaintiff's failure to offer any authority supporting a finding of standing in the consumer fraud context, the court finds that plaintiff has not alleged injury-in-fact.  Because the alleged injury and the allegations of fraudulent wrongdoing are virtually identical across all claims, plaintiff lacks standing for all claims.  See, e.g., Lassen, 211 F. Supp. 3d at 1274-75, 1289; Azoulai, 2017 WL 1354781, at *4;

10

see also <u>Maya</u>, 658 F.3d 1060.  The court will therefore dismiss all claims with leave to amend.  <u>Maya</u>, 658 F.3d at 1072.

   IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 8) be, and the same hereby is, GRANTED.

   Plaintiff has twenty days from the date this order is signed to file a First Amended Complaint, if she can do so consistent with this Order.

Dated:  June 5, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE